# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MAURICE A. BECKWITH,     )
                            )
              Plaintiff,    )
                            )
            v.            )     1:08CV168
                            )
CORTEGRA GROUP, INC.,    )
D/B/A NEW JERSEY PACKING,   )
                            )
              Defendant.   )

**MEMORANDUM OPINION AND RECOMMENDATION OF MAGISTRATE JUDGE ELIASON**

In filing this action, Plaintiff asserts a number of employment discrimination claims arising out of his discharge from employment with Defendant. He also includes a wage and hour claim. Defendant seeks dismissal of the claims of racial discrimination, retaliation, and a state law wrongful discharge claim.

Plaintiff, an African-American male, began working as a material handler for Defendant on or about June 12, 2006. (Compl. ¶¶ 13-14.) His supervisor in this position was operations manager Paul Jagielski ("Jagielski"), and, for at least some portion of Plaintiff's employment, Defendant's only other supervisor was Fawn Dunlap ("Dunlap"), the human resources manager. (Compl. ¶¶ 15-17.) Both Jagielski and Dunlap are Caucasian. (Compl. ¶¶ 15-16.) According to the complaint, Defendant hired two additional African-American males sometime prior to the events at issue in this case[1]

---

[1]The complaint gives the hiring date of these two employees as April 30, 2007. However, the same complaint alleges that these men were already employees of the company on April 25, 2007, when they were present at a meeting with both
(continued...)

and hired an African-American female shortly thereafter. (See Compl. ¶¶ 17-18, 20.)

During the course of Plaintiff's employment, Dunlap would, on occasion, place orders with Randy's Pizza on behalf of the company, and Randy's would deliver pizza to the facility. (Compl. ¶ 19.) On April 25, 2007, Jagielski informed Plaintiff and the two other African-American male employees that "he had received a call from an employee at Randy's Pizza stating that a 'big black guy' attempted to use Mr. Jagielski's name to order a pizza." (Compl. ¶¶ 20-21.) Jagielski met with the three employees again on April 30, 2007 concerning the purchase attempt, which, according to Plaintiff, was viewed as attempted theft from the company. (Compl. ¶ 22; see also Docket No. 10, p. 5.) At that meeting, Plaintiff and another employee allegedly objected to Jagielski's use of the phrase "big black guy." (Compl. ¶¶ 23-24.) Plaintiff specifically informed Jagielski that he found the reference offensive and "had consulted with the NAACP and an attorney about the situation." (Compl. ¶ 24.) When asked if they agreed with Plaintiff, the other two employees declined to comment further during the meeting, but Jagielski later spoke with them privately in his office. (Id.)

Three days later, on May 3, 2007, Jagielski suspended Plaintiff with pay for three days. (Compl. ¶ 25.) Jagielski told Plaintiff, in the presence of company president Gene Dul, that "he

    ¹(...continued)
Plaintiff and Jagielski. In any event, the complaint as a whole seems to indicate that Plaintiff was not the sole African-American male working for Defendant at the time the alleged discriminatory activity took place.

-2-

had received a complaint from an unidentified individual stating that [Plaintiff][] had used the 'N' word in the workplace." (Compl. ¶¶ 25-26.) Plaintiff denied the allegation. (Compl. ¶ 26.)

On May 7, 2007, during his suspension, Plaintiff sought medical treatment for foot pain and obtained a doctor's order excusing him from work until May 9, 2007. (Compl. ¶¶ 27-28; <u>see also</u> docket no. 9, p. 3.) When Jagielski called Plaintiff at home on May 8, 2007, Plaintiff informed him of his injury. (Compl. ¶ 29.) At that time, Plaintiff also informed Jagielski that he intended to file a complaint with the EEOC. (Compl. ¶ 30.) Shortly thereafter, Jagielski called Plaintiff and notified him that his employment with Defendant had been terminated because Plaintiff's comments created a hostile work environment. (Compl. ¶¶ 31-32; Docket No. 9, p. 3.)

## Legal Standard

Defendants have filed a partial motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. The standard for such review was recently set out in <u>Giarratano v. Johnson</u>, 521 F.3d 298, 302 & 304 (4th Cir. 2008), where the court stated:

> [W]e "take the facts in the light most favorable to the plaintiff," but "we need not accept the legal conclusions drawn from the facts," and "we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." <u>Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship</u>, 213 F.3d 175, 180 (4th Cir.2000); <u>see also</u> <u>Bass v. E.I. DuPont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir.2003). Additionally, the complaint must be dismissed if it does not allege "enough facts to state a

claim to relief that is <u>plausible</u> on its face." <u>Bell Atl.</u>
<u>Corp. v. Twombly</u>, _____ U.S. _____, 127 S.Ct. 1955, 1974,
167 L.Ed.2d 929 (2007) (emphasis added).

. . .

The conclusion that dismissal is appropriate comports
with <u>Twombly</u>, _____U.S. _____, 127 S.Ct. 1955, 167 L.Ed.2d
929 (2007), [when the pleadings do not disclose] "enough
facts to state a claim to relief that is plausible on its
face." Id. at 1974. In <u>Twombly</u>, the Supreme Court, noting
that "a plaintiff's obligation to provide the 'grounds'
of his 'entitlement to relief' requires more than labels
and conclusions, and a formulaic recitation of the
elements of a cause of action will not do," <u>id.</u> at
1964-65, upheld the dismissal of a complaint where the
plaintiffs did not "nudge [ ] their claims across the
line from conceivable to plausible." <u>Id.</u> at 1974.

Here, as will be seen, Plaintiff simply does not state sufficient
facts on which the Court may conclude that Defendant's actions
constituted racial discrimination or a violation of North
Carolina's public policy regarding wrongful discharge. For this
reason, those two claims should be dismissed.

## Discussion

### Racial Discrimination

In his complaint, Plaintiff merely states that Defendant
discriminated against him because of his race.[2] Plaintiff makes no
attempt to specify the type of discrimination in his complaint.
However, in his brief, he identifies the facts upon which he bases
his claims of discrimination as follows:

---

[2]This claim is alleged in count one where Plaintiff alleges unlawful
discrimination on account of Plaintiff's race in violation of Title VII of the
Civil Rights Act of 1964, 42 U.S.C. §2000e, <u>et seq</u>. ("Title VII"), and in count
three where he states that those acts also constitute discrimination in violation
of 42 U.S.C. § 1981. The same analysis applies under either statute. <u>See Lewis</u>
<u>v. AT&T Tech., Inc.</u>, 691 F. Supp. 915, 917 n.4 (4th Cir. 1986).

-4-

Plaintiff [sic] allegations include: (1) Defendant
falsely accused Plaintiff of stealing from the company
based upon Plaintiff fitting a description of a "big
black guy"; (2) Defendant referred to Plaintiff as a "big
black guy", a statement that caused Plaintiff and another
employee to complain about such language; (3) Defendant
suspended Plaintiff days after Defendant informed
Defendant he had contacted the National Association for
the Advancement of Colored People (hereinafter "NAACP")
about the derogatory language; (4) Defendant falsely
accused Plaintiff of creating a hostile work environment;
and (5) Defendant fired Plaintiff one day after Plaintiff
informed Defendant he intended to file a complaint with
the Equal Employment Opportunity Commission (hereinafter
"EEOC").

(Docket No. 10, pp. 4-5.)

It should be noted that two of the five incidents involve retaliation and are relevant to the retaliation claim and not discrimination. Of the other three, two involve "false accusations." The fact that Plaintiff was falsely accused of stealing or creating a hostile work environment, by themselves, do not constitute facts upon which to predicate a claim of discrimination. False accusations do not amount to discrimination and Plaintiff fails to give any reason for believing the false accusations were tied to discrimination. Balazs v. Liebenthal, 32 F.3d 151 (4th Cir. 1994); Mitchell v. Wachovia Corp., 556 F. Supp. 2d 336, 348 (D. Del. 2008); Matlosz v. J.P. Morgan Chase, No. 03 Civ. 6235(JGK), 2005 WL 2242196 (S.D.N.Y. Sept. 3, 2005). Thus, the only remaining incident capable of constituting discrimination is the "big black guy" comment.[3] Defendant also makes the guess

---

[3]Only two of the five events set out above have any connection to race. One is the allegedly derogatory comment "big black guy." The other is Plaintiff's alleged use of a racial slur. But since he is the one accused of
(continued...)

that Plaintiff is actually complaining about a hostile work environment, apparently concentrating on the allegation that Plaintiff was called "a big black guy."

Title VII prohibits an employer from engaging in "discrimination against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . race." 42 U.S.C. § 2000e-2(a)(1). Title VII specifically proscribes an employer from maintaining a "workplace permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 12, 21 (1993)(citations omitted). Notably, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview." <u>Id.</u>

Defendant argues that Plaintiff has not alleged sufficient facts to establish a prima facie case. However, a plaintiff can prove a claim of racial discrimination either by using the burden shifting framework set forth in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1993) or through direct evidence.[4] Plaintiff counters

---

[3](...continued)
using it, his discharge could not be racially motivated, unless Plaintiff also alleged that others used it and were not discharged, which he has not done.

[4]Under <u>McDonnell Douglas</u>, a plaintiff must first establish a prima facie case by showing that (1) he was subjected to unwelcome conduct (2) based on his
(continued...)

-6-

that the <u>McDonnell Douglas</u> framework is inapplicable to his situation because he has direct evidence of discrimination, citing <u>Swierkiewicz v. Sorema</u>, 534 U.S. 506 (2002).

Plaintiff suggests that Defendant's actions, in particular the use of the phrase "big black guy," the implied accusation of attempted theft, and the accusation of and suspension for Plaintiff's own use of a racial slur, which he denied, constitute direct evidence of racial discrimination, such that there is no need to employ the <u>McDonnell Douglas</u> burden-shifting paradigm.[5] Plaintiff is also correct in asserting that, to survive a motion to dismiss under Rule 12(b)(6), a Title VII complaint need not plead facts sufficient to defeat summary judgment. See <u>Swierkiewicz</u>, 534 U.S. at 511. At the pleading stage, courts simply consider whether the facts, as pled, include unlawful discrimination among the realm of plausible possibilities. See <u>Bell Atl. Corp. v. Twombly</u>, ____ U.S. ____, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). This does not mean, however, that just any set of facts will suffice. A plaintiff must still provide sufficient facts to "nudge[] their claims across the line from conceivable to plausible." <u>Id.</u>

---

[4](...continued)
race (3) which "was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work atmosphere," and (4) that the conduct is attributable to his employer. <u>Causey v. Balog</u>, 162 F.3d 795, 801 (4th Cir. 1998). Once a plaintiff has established these elements, the burden shifts to the employer to show a legitimate, nondiscriminatory basis for its actions. <u>See McDonnell Douglas v. Green</u>, 411 U.S. 792, 802 (1993).

[5]As noted earlier, the allegedly false accusations do not amount to viable claims of discrimination.

In <u>Swierkiewicz</u>, the appellate court erred by dismissing a complaint on the grounds that it failed to "allege 'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." <u>Twombly</u>, 127 S.Ct. at 1973-74. But, Defendant's motion here does not rely on any such heightened pleading standard. Instead, it simply alleges that Plaintiff fails to allege facts which entitle him to relief under Title VII or § 1981. While Plaintiff contends that he was the victim of racial discrimination, nothing in the complaint raises his assertions above the speculative level.

The crux of Plaintiff's allegations is that Jagielski's use of the phrase "big black guy" was derogatory without citing any proof or reasons.[6] Yet, the phrase is in no way derogatory, as opposed to being merely descriptive. Moreover, Plaintiff does not even allege that Jagielski was the originator of this phrase. At most, Plaintiff questions, without any basis, whether Jagielski accurately quoted the physical description given by an employee at Randy's Pizza. In this context, it is even questionable whether this phrase was, in fact, "used" by an employer so as to implicate Title VII at all. More importantly, Jagielski's use of the phrase to explain why Defendant's three male African-American employees had been singled out as suspects of an attempted theft was merely a straightforward factual event providing no basis for thinking his

---

[6]Even if the use of the phrase were derogatory, the Court questions whether this single incident would qualify as a hostile work environment. <u>Davidson v. America Online, Inc.</u>, 337 F.3d 1179, 1185 (10th Cir. 2003).

-8-

accusations regarding these employees had a discriminatory motive. In short, there is insufficient direct or indirect, non-conclusory evidence of racially-motivated discrimination for Plaintiff's claims to go forward.

## Retaliation

Defendant next argues that Plaintiff's retaliation claim fails as a matter of law. The retaliation claim is apparently based on Plaintiff protesting the use of the term "big black guy" and his threat, issued to Jagielski, to file a complaint with the EEOC. Like the racial discrimination claims above, this contention cites a duel basis in Title VII and § 1981. Section 704(a) of Title VII makes it unlawful to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The elements for such a claim are that (1) he was engaged in protected activity, (2) an adverse employment action was taken against him, and (3) there was a causal connection between the two. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 656 (4th Cir. 1998).

Defendant contends that Plaintiff's retaliation claim fails to state a claim under this section for the following reasons: (1) Plaintiff did not engage in an activity protected under Title VII, and (2) Plaintiff failed to show that he had a subjectively good

-9-

faith belief that the conduct he complained of was objectively reasonable.

Starting with the first contention, Defendant asserts that a plaintiff must actually file a charge of discrimination in order to trigger the protections of Title VII and that the intent to file is not enough. (Docket No. 9, p. 10.) However, Defendant itself shows that Plaintiff did, in fact, file a charge of discrimination with the EEOC. (<u>See</u> Docket No. 9, n.2.) It is true that this occurred only after he was terminated, but Defendant fails to show that this fact is significant. Defendant attempts to argue that the tardy filing belies Plaintiff's "claim of participating in protected activity," but cites no authority for this proposition either and conveniently ignores the fact that the termination itself came a short time after Plaintiff voiced his intent to file with Jagielski. Using Defendant's logic would create an incentive for employers to fire oppositional employees as quickly as possible in order to prevent retaliation claims. This clearly could not be Congress' intention. <u>See</u> <u>Arzate v. City of Topeka</u>, 884 F. Supp. 1494, 1503 (D. Kan. 1995)(informal complaints to management held protected activity under Title VII); <u>Harker v. Utica College of Syracuse Univ.</u>, 885 F. Supp. 378, 385 (N.D.N.Y. 1995)(protected activities include complaints to management and informal protests).

Defendant's second contention for dismissal may be on stronger grounds. The Fourth Circuit has "recognized that section 704(a) protects activity in opposition not only to employment actions actually unlawful under Title VII but also employment actions an

-10-

employee reasonably believes to be unlawful." E.E.O.C. v. Navy Fed. Credit Union, 424 F.3d 397, 406 (4th Cir. 2005). The question here is whether a reasonable employee could plausibly believe that Jagielski's use of the phrase "big black guy," his implied accusation of attempted employee theft, and his suspension of Plaintiff for Plaintiff's own alleged use of a racial slur, violated Title VII. Here, that question is admittedly close.

> Objectively reasonable employees can and do recognize that not every offensive comment will by itself transform a workplace into an abusive one. Therefore it sometimes will not be reasonable for an employee to believe that the isolated harassing event he has witnessed is a component of a hostile workplace that is permeated with discriminatory intimidation, ridicule, and insult.

Jordan v. Alternative Resources Corp., 458 F.3d 332, 342 (4th Cir. 2006). However, at this stage, the Court is not ruling on the merits of the claim. According to Plaintiff, he consulted with the NAACP after both he and another employee found the use of the term "big black guy" offensive and complained about it. This provides some slight factual basis for the claim when, as here, Plaintiff was discharged soon thereafter. It may be that the context of Plaintiff's protest may provide more support for the claim. It would be premature to resolve the issue at this stage. See E.E.O.C. v. Virginia Carolina Veneer, 495 F. Supp. 775, 778 (D.C. Va. 1980)("If the availability of [] protection [under section 704(a)] were to turn on whether the employees [sic] charge were ultimately found to be meritorious, resort to the remedies provided by the Act would be severely chilled.").

## Wrongful Discharge

In addition to Plaintiff's federal claims under Title VII and § 1981, he alleges that he was wrongfully discharged because of his race in violation of N.C.G.S. § 143-422.2. The North Carolina legislature has explicitly stated that it is the public policy of the State of North Carolina that persons have the right to "obtain and hold employment without discrimination or abridgment on account of race . . . ." Id. For purposes of the present case, it is significant that this cause of action largely mirrors the federal discrimination claims previously alleged by Plaintiff.

> Given the similar language and underlying policy of § 143-422.2 and Title VII, 42 U.S.C. § 2000e, et seq., the North Carolina Supreme Court has explicitly adopted the Title VII evidentiary standards in evaluating a state claim under § 143-422.2 insofar as they do not conflict with North Carolina Statutes and case law.

Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995)(citing North Carolina Dep't of Correction v. Gibson, 308 N.C. 131, 301 S.E.2d 78, 82-85 (1983)). However, Plaintiff failed to adequately allege facts showing racial discrimination under Title VII, except for retaliation. This fact eviscerates his state law wrongful discharge claim based on discrimination.

As for retaliation, Plaintiff does not allege discharge by retaliation, but rather only discharge based on discrimination. He fails to provide any connection between his race and his termination.[7] He merely reiterates that he complained of a

---

[7]He does not recite facts supporting disparate treatment. See, e.g., Moore v. City of Charlotte, 754 F.2d 100, 1106-06 (4th Cir. 1985)(citing Burdette v. FMC Corp., 566 F. Supp. 808, 815 (S.D.W. Va. 1983)).

-12-

racially derogatory comment and was terminated soon thereafter. As stated above, these facts do not support a conclusion that Plaintiff was terminated <u>because</u> of his <u>race</u>. Second, unfortunately for Plaintiff, North Carolina does not recognize tort claims under N.C.G.S. § 143-422.2 for wrongful discharge based on retaliation. <u>See</u> <u>Efird v. Riley</u>, 342 F. Supp. 2d 413 (M.D.N.C. 2004); <u>Mullis v. Mechanics & Farmers Bank</u>, 994 F. Supp. 680, 688 (M.D.N.C. 1997)("[N]o North Carolina court has interpreted the NCEEPA to include a claim for discharge in retaliation for complaining about discriminatory employment practices"). Thus, Plaintiff's wrongful discharge claim, like his federal discrimination claims, merits dismissal.

**IT IS THEREFORE RECOMMENDED** that Defendant's partial motion to dismiss (docket no. 8) be granted as to the first, third, and fourth counts of the complaint and denied as to the second count.

_____
United States Magistrate Judge

November 12, 2008

-13-